## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JOYCE M. OVERLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 05-2161-CM** |
| | ) | |
| **BLACK & VEATCH CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Plaintiff Joyce M. Overly brings this employment discrimination action claiming that defendant Black & Veatch Corporation terminated her employment because she sustained an injury for which she might assert a future workers' compensation claim or because she actually filed a workers' compensation claim. She also claims that defendant failed to pay her overtime although she worked in excess of forty hours a week, in violation of the Fair Labor Standards Act ("FLSA"). Defendant has filed a motion for partial summary judgment (Doc. 68). Defendant claims that (1) plaintiff cannot recover liquidated damages under the FLSA because defendant acted in good faith and reasonably believed that its employee classification decisions complied with the FLSA; (2) a two-year statute of limitations applies under the FLSA because plaintiff has no evidence that defendant "willfully" violated the FLSA; and (3) plaintiff has no evidence that would warrant punitive damages. For the following reasons, the court denies defendant's motion.

## I.  FACTUAL BACKGROUND[1]

A.  Facts Related to FLSA Claim

In 2002, defendant created a new Finance job family.  In conjunction with creation of the new group, defendant established a core team of finance professionals, who developed job descriptions based on functions the core team members performed.  The team categorized the jobs into levels based on similarity of duties and responsibilities.  Compensation specialists from Human Resources then applied their knowledge of the FLSA and made a preliminary determination of where the exempt and non-exempt distinction would fall within the levels (i.e., they determined which positions should be exempt from overtime under the FLSA and which should be non-exempt).  The specialists initially determined that some, but not all, of the Level Three Finance professionals were performing non-exempt duties.  The specialists did not receive legal help in determining initial job classifications.

Defendant then hired Terry Burger – former Kansas City Director of the Wage and Hour Division, United States Department of Labor – to review the classification decisions.  Defendant asked Mr. Burger to verify that defendant applied the FLSA correctly and to advise defendant at what level the exempt and non-exempt distinction should be made.  Mr. Burger examined twelve of the Level Three Finance job descriptions and determined that some of the positions should be exempt, and some non-exempt.  Although Mr. Burger did not review all positions within the Finance job family, he reviewed the Level Three positions that were in the same "tracks" as the Level Four and Level Five positions that plaintiff held in the Finance

---

[1]  The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed. R. Civ. P. 56.  The parties (particularly plaintiff) proposed a large number of proposed uncontroverted facts which are not recounted here.  The court has included only those facts which are relevant, material, and properly supported by the record.

family.  When Mr. Burger reviewed the Level Three positions, however, he never physically reviewed job functions on-site.  Based on Mr. Burger's review, defendant decided to classify all Level Three positions within the Finance job family as non-exempt.  Defendant then classified all Level Four through Level Eight positions in the Finance job family as exempt from overtime under the FLSA.

Defendant's two compensation analysts are responsible for analyzing whether changes in exempt/non-exempt job classifications are appropriate.  Defendant does not have a formal audit system in place to review actual job duties compared to the applicable job description once a job is classified as exempt or non-exempt, but managers point out differences in the descriptions and duties to the compensation department when necessary.  Defendant has not conducted any reviews to determine whether an actual job that an employee is doing fits the applicable job description.  Since the Finance job family was new, however, Jenny Meegan, Director of Employee Services and Rewards, testified in deposition that the job descriptions were reflective of what responsibilities were being performed.

All positions plaintiff held were within the Finance job family.[2]  After the Finance family roll-out in November 2002, plaintiff was a Senior Business Systems Analyst, which was a Level Five position.  From approximately January 2004 through January 2005, plaintiff was a Senior Project Accountant, which was a Level Four position.  From January 29, 2005 through April 1, 2005, plaintiff was a Level Four Senior Financial Reporting Accountant.  Defendant classified all three positions as exempt from overtime.

B.  Facts Related to Retaliation Claim

On Saturday, March 19, 2005, plaintiff hurt her shoulder at work.  Plaintiff did not tell her

---

[2]  Plaintiff dedicates much time to discussing her job duties and how they continually changed and differed from her job descriptions.  While these facts may be relevant to whether plaintiff's particular job should have been non-exempt, the court finds them irrelevant to the issues at hand.

supervisor, Pamela White, about the injury on Saturday or Sunday because she believed that she could still get her work done.

On the morning of Monday, March 21, 2005, Ms. White contacted her own supervisor, Dave Mendelsohn, to recommend terminating plaintiff's employment for poor performance.  At approximately 3:30 p.m. that same day, plaintiff reported Saturday's injury to Kelly Wasko in defendant's Health and Safety department.  On Tuesday, March 22, Mr. Mendelsohn and Ms. White were notified of plaintiff's work-related injury.  Mr. Mendelsohn then contacted Craig Anderson, Human Resources Director, who also holds a law degree.  Mr. Anderson in turn consulted with in-house counsel to discuss plaintiff's termination.

Plaintiff was sent to the occupational clinic, and was able to continue working based on her doctor's limited restriction that she decrease the use of her left arm.  She returned to work with no restrictions in approximately one week, on March 29, 2005.  Plaintiff was to avoid any activity that caused her pain in her arm and to take it easy with her arm.  On March 29, Ms. White discussed with plaintiff her ability to work the amount of overtime that was required to do her job.  Plaintiff stated that she thought it would be difficult for her to work the hours that Ms. White expected, and that she did not know that she could work that hard without re-injuring her arm.

Defendant terminated plaintiff's employment on March 30, 2005.  The record contains evidence suggesting that defendant did not follow its written discipline policies before terminating plaintiff, and that Ms. White did not consult a particular policy in reaching her decision to terminate plaintiff's employment.

## II.  STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue

as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  DISCUSSION

### A.  Liquidated Damages - FLSA Claim

Defendant first claims that plaintiff cannot, as a matter of law, recover liquidated damages under the FLSA because defendant acted in good faith and had reasonable grounds for believing that it was FLSA-compliant.  Section 216(b) of the FLSA provides that "[a]n employer . . . that violates the FLSA is ordinarily liable for both unpaid wages and an additional amount as liquidated damages."  29 U.S.C. § 216(b).  Under 29 U.S.C. § 260, a court *must* award liquidated damages unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [defendant] had reasonable grounds for believing that [its] act or omission was not a violation. . . ."  *Id.* § 260; *Doty v. Elias*, 733 F.2d 720, 725 (10th Cir. 1984); *McLaughlin v. Somnograph, Inc.*, No. 04-1274-MLB, 2005 WL 3489507, at *7 (D. Kan. Dec. 21, 2005) (citing *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994)).  "'Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA.'"  *Jordan v. United States Postal Serv.*, 379 F.3d 1196, 1202 (10th Cir. 2004) (citation omitted).  The purpose for the liquidated damages provision is "'the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'"  *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991)

(citation omitted).

To meet the subjective "good faith" requirement, the employer must have an "honest intention to ascertain and follow the dictates of the [FLSA]." *Id.* at 1540 (citation omitted). The "reasonable grounds" requirement imposes "'an objective standard by which to judge the employer's behavior.'" *City of Sapulpa*, 30 F.3d at 1289 (citation omitted). "The most logical step for a defendant concerned about the legality of its compensation plan is to seek an opinion from the relevant government agency, the Wage and Hour Division of the Department of Labor." *Ackley v. Dep't of Corr. of State of Kan.*, 844 F. Supp. 680, 688 (D. Kan. 1994). The employer bears the burden of showing its good faith and the reasonable grounds for its decision. *See* 29 U.S.C. § 260; *Renfro*, 948 at 1540 (citation omitted). Even where the employer meets its burden, however, the court retains discretion whether to award liquidated damages. *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1245 (10th Cir. 2000) (citation omitted); 29 C.F.R. § 790.22(b) (stating that when the employer meets its burden, "the court is permitted, but not required, in its sound discretion to reduce or eliminate the liquidated damages which would otherwise be required in any judgment against the employer"). The court, and not a jury, determines whether liquidated damages are appropriate. *See Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1232, 1239 (D. Kan. 2005) (collecting cases).

On the record before it, the court finds that defendant has not met its burden of showing both that it acted in good faith and that it had reasonable grounds for believing that it was in compliance with the FLSA. Defendant relied on a team of finance professionals to develop job descriptions, and asked its Human Resources department to make an initial determination of where the exempt/non-exempt line would fall. But the court does not know the qualifications of the members of the Human Resources Department or

the precise methods they used to categorize positions.  And although defendant hired Mr. Burger as a consultant to help defendant make the ultimate determination which positions in the Finance job family should be classified as non-exempt, Mr. Burger did not review any positions above Level Three.  At this stage of the litigation, the court is unwilling to presume that defendant's internal Human Resources department made the correct determination of where the exempt/non-exempt line should be drawn.  Additionally, aside from Mr. Burger's former job title, the court does not have any other information about his qualifications.  Although the court may ultimately find that defendant's steps constituted a good faith attempt to comply with the FLSA, and that defendant reasonably relied on the determinations of Mr. Burger and its internal staff, at this time, the court does not have sufficient evidence from which it can make that determination.

As an additional note, even if the court were to conclude that defendant had met its burden on this issue, the court still would not grant summary judgment at this time.  The court's inquiry does not end with whether defendant acted in good faith and with reasonable reliance.  As noted above, the decision whether to award liquidated damages is still discretionary with the court.  Because the purpose of liquidated damages under the FLSA is compensatory and not punitive, *Jordan*, 379 F.3d at 1202, the court will wait until after hearing all of the evidence before determining whether an award of liquidated damages is appropriate.

**B.  Statute of Limitations - FLSA Claim**

Defendant next claims that any damages under the FLSA should be limited to two years as a matter of law.  A two-year statute of limitations generally applies to FLSA actions.  29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 135 (1988).  But if a plaintiff can establish that an

employer's violation of the FLSA is willful, the limitations period extends to three years.  29 U.S.C. §

255(a); *see also Brinkman v. Dep't of Corrs.*, 21 F.3d 370, 372 (10th Cir. 1994).  A plaintiff meets the

willful standard by showing that the employer "either knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the statute."  *McLaughlin*, 486 U.S. at 132.  On the converse side,

an action is not willful where an employer acts reasonably, or unreasonably but not recklessly.  *Id.* at 135

n.13.  The plaintiff bears the burden of showing that the employer's violation is willful.  *Adams v. United*

*States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) (citation omitted).  The court notes that the same standard

the court applied to the liquidated damages issue also applies to the statute of limitations/willfulness inquiry.

*Brinkman*, 21 F.3d at 373.

        For the same reasons stated above regarding the liquidated damages issue, *see id.*, the court also

finds that a genuine issue of material fact exists as to whether defendant's conduct was willful.  The issue is

one for a jury, *see Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162-63 (4th Cir. 1992), and the

court will allow a jury to determine whether the two-year or three-year statute of limitations applies to

plaintiff's claims under the FLSA.

## C.  Punitive Damages - Workers' Compensation Retaliation Claim

        Defendant's final argument is that punitive damages are not available as a matter of law for

defendant's alleged violation of Kansas law.  As previously noted, plaintiff alleges that defendant violated

Kansas law by terminating her employment in retaliation for filing a workers' compensation claim or for

sustaining an injury for which she might assert a future workers' compensation claim.  To succeed on a

claim for punitive damages, a plaintiff must show by clear and convincing evidence that the defendant acted

with willful or wanton conduct, fraud, or malice.  Kan. Stat. Ann. § 60-3703(c).  Willful conduct is "an act

performed with a designed purpose or intent on the part of the person to do wrong or to cause an injury to another." *Sanjuan v. IBP, Inc.*, 919 F. Supp. 378, 384 (D. Kan. 1996) (citing PIK Civ. 2d § 3.02). "For an act to amount to wantonness, the actor must have reason to believe that his act may injure another and commit the act anyway, with indifference to whether it injures another." *Smith v. Printup*, 866 P.2d 985, 1013 (Kan. 1993). And malice is "a state of mind characterized by intent to do a harmful act without reasonable justification or excuse." *Sanjuan*, 919 F. Supp. at 384 (citing PIK Civ. 2d § 3.04).

Plaintiff has offered evidence suggesting that defendant terminated plaintiff in retaliation for filing a workers' compensation claim or for sustaining an injury for which she might assert a future workers' compensation claim. Defendant has produced evidence suggesting that the termination decision was made before Ms. White knew about plaintiff's injury, and that defendant took every reasonable precaution to ensure that it would not violate the law by firing plaintiff after she sustained the work-related injury. Notably, defendant has *not* moved for summary judgment on the retaliation claim itself, acknowledging the close proximity of time between plaintiff's report of her work-related injury and her termination, and acting in the interests of judicial economy. While the evidence in support of plaintiff's claim for punitive damages is not strong, the court finds that a reasonable jury could find that defendant's acts were willful, wanton, or malicious. The nature of retaliation itself is inherently intentional. *See Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 936 (11th Cir. 2000). Summary judgment is denied on this issue.

**IT IS THEREFORE ORDERED** that Defendant Black & Veatch Corporation's Motion for Partial Summary Judgment (Doc. 68) is denied.

Dated this 24th  day of May 2006, at Kansas City, Kansas.


**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**